UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

## DECLARATION MADE IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

1.  My name is Dawn Tofuri. I am the Manager of Human Resources for San Antonio Aerospace, L.P. ("SAA"), the Defendant in this case brought by Levi Reed.

2.  I have custody and control of the personnel records related to Levi Reed Jr. a former employee of SAA. These records show that Mr. Reed was employed by SAA as a security officer from December 30, 2002 to September 4, 2004. On September 4, 2004 his employment was terminated because a female employee, Janice Johnson, made a complaint that Mr. Reed had sexually harassed her by kissing her on the forehead, to which she objected, and had threatened her. The incident was captured by a video camera which operates at the SAA security gate on a regular basis. The video accurately portrays the events that occurred that day. The video is attached hereto as **Exhibit A**. Ms. Johnson's incident report is attached hereto as **Exhibit B**. Mr. Reed's harassment of Ms. Johnson was the sole reason for Mr. Reed's discharge, as indicated on his termination report, attached hereto as **Exhibit C**.

3.  After his termination, Mr. Reed filed a charge with the EEOC in which he charged that he had been discriminated against because of his race. A copy of the charge as received by SAA is attached hereto as **Exhibit D**. In his charge Mr. Reed indicates that when he attempted to report an incident of alleged discrimination through use of an SAA Incident Report, it was refused. This is not true; a true and correct copy of Mr. Reed's incident report is attached hereto as **Exhibit E**. Mr. Reed's claim as stated in his July 27, 2004 Incident Report was investigated the very next day by Security Administrator David Rodriguez and two other senior supervisors. Their report to the SAA Human Resources Department is attached hereto as **Exhibit F**. The senior supervisors concluded that while Mr. Reed had not been discriminated against because of his race, it would be appropriate to move the alleged offender, Mr. Young, to another shift to eliminate contact between him and Mr. Reed. The report indicates that the incident was resolved when Mr. Reed and Mr. Young apologized to one another and shook hands and Mr. Reed tore up his copy of the complaint.

4.  The EEOC also investigated the  incident made the basis of Mr. Reed's charge and sent to Mr. Reed and SAA the letter attached hereto as **Exhibit G** in which they indicate that "San Antonio Aerospace took immediate and appropriate action to resolve your complaint" [of discrimination based on race]. In that same letter the EEOC requested that Mr. Reed provide it with any further information concerning his claim. In response, on or about November 29, 2004 Mr. Reed sent to the EEOC the handwritten letter attached hereto as **Exhibit H.** In the last paragraph of the November 29th letter (which is also attached to Mr. Reed's Complaint filed in this case at Docket #6) he states that his charge of discrimination is *not* based on being discharged for the August 28, 2004 incident (the harassment of Janice Johnson), but on other past claimed discrimination.

5.  Up until he was terminated for harassment of Janice Johnson, Mr. Reed suffered no demotions, reductions in pay, reductions or ineligibility for benefits, no reprimands or disciplinary measures or any other adverse employment actions.

6.  SAA has adopted a comprehensive Equal Employment Opportunity and Treatment Policy ("EEO Policy"), attached hereto as **Exhibit I**, and has exerted great efforts to implement and enforce its policy. The EEO Policy is included in SAA's Employee Handbook. When Mr. Reed was hired, he received and signed an acknowledgement confirming that he had read and understood the policies in the Employee Handbook, attached hereto as **Exhibit J.** Further, during orientation, all new employees receive training on the EEO Policy. During his orientation, Mr. Reed signed a separate copy of the EEO/Harassment Policy, acknowledging that he read and understood the policy, attached hereto as **Exhibit K.**  Mr. Reed's discharge for harassment on another employee was consistent with its policies made known to Mr. Reed and acknowledged by him. Based on the records of SAA, prior to the incident between Mr. Reed and Ms. Johnson, SAA had no other reported incidence of harassment by a SAA employee against a co-worker; thus, there is no basis upon which Mr. Reed could claim that he was treated differently than any other employee.

7.  The EEO Policy states that SAA "provide[s] equal employment opportunity and equal treatment in all aspects of employment to all employees...without regard to their *race, color,* religion, sex (including pregnancy, childbirth and related medical conditions), national origin, age (40 and over), citizenship, physical or mental disability, or military obligations." This policy prohibits "any form of harassment of [SAA's] employees," specifically including

- Any hostile, intimidating, offensive, insulting, demeaning, profane or vulgar words or conduct...;

- Harassment because of a person's sex, *race, color,* national origin, religion, age or disability...;

- Offensive, insulting or demeaning remarks, gestures, jokes, pranks, slurs and graffiti about a person's sex, *race, color,* national origin, religion, age or disability...;

- Managers' or supervisors' use of threatening, intimidating, demeaning or insulting words or actions in dealing with employees under their supervision, particularly any derogatory comments about an employee or an employee's job performance related to the employee's *race*, sex, national origin, religion, age or disability.

Under the EEO Policy, "harassment of [SAA's] employees is forbidden and will result in disciplinary action, which may include discharge." Although employees are advised that they may report unlawful harassment or discrimination to their supervisors or managers, who in turn are instructed to inform the Manager of Human Resources, the EEO Policy requires employees to report any discrimination or harassment complaint directly to SAA's Manager of Human Resources, who investigates all complaints. The EEO Policy makes clear that, if a complaint is valid, SAA "will take prompt and effective remedial action against the persons engaging in such conduct," which "may be discharge." Mr. Reed only made the one report of harassment discussed above. SAA promptly investigated the incident, and although it determined that the incident was not race related, it took the remedial action of separating Mr. Reed and Mr. Young to avoid further personality conflict. At the time, the records show that Mr. Reed was satisfied with the action SAA took and that he shook Mr. Young's hand.

8.  Like SAA's internal investigation, the EEOC found no reason to believe that SAA had discriminated against Mr. Reed because of his race, see **Exhibit L**. In fact the EEOC found that SAA has acted appropriately with regard to his complaint. See **Exhibit G**.

9.  All the exhibits attached hereto, except Exhibits D, G, H and L are business records of SAA, made in the ordinary course of its business, made at or near the time of the acts or events described therein by, or from information transmitted by a person a person with knowledge of the events described in the records. It was and is the regular course of business of SAA to make these records and the records are kept by SAA in the regular course of its business. Exhibits D, G, H and L are true and corrects copies of EEOC documents transmitted to SAA by the EEOC and are offered as statements or admissions made by Mr. Reed that are against his interest in this case.

10. I am prepared to testify in person as to the truth of the above statements. In accordance with Title 28 United States Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Affiant further sayeth not.

_____

Dawn Tofuri

- Managers' or supervisors' use of threatening, intimidating, demeaning or insulting words or actions in dealing with employees under their supervision, particularly any derogatory comments about an employee or an employee's job performance related to the employee's *race*, sex, national origin, religion, age or disability.

Under the EEO Policy, "harassment of [SAA's] employees is forbidden and will result in disciplinary action, which may include discharge." Although employees are advised that they may report unlawful harassment or discrimination to their supervisors or managers, who in turn are instructed to inform the Manager of Human Resources, the EEO Policy requires employees to report any discrimination or harassment complaint directly to SAA's Manager of Human Resources, who investigates all complaints. The EEO Policy makes clear that, if a complaint is valid, SAA "will take prompt and effective remedial action against the persons engaging in such conduct," which "may be discharge." Mr. Reed only made the one report of harassment discussed above. SAA promptly investigated the incident, and although it determined that the incident was not race related, it took the remedial action of separating Mr. Reed and Mr. Young to avoid further personality conflict. At the time, the records show that Mr. Reed was satisfied with the action SAA took and that he shook Mr. Young's hand.

8. Like SAA's internal investigation, the EEOC found no reason to believe that SAA had discriminated against Mr. Reed because of his race, see **Exhibit L**. In fact the EEOC found that SAA has acted appropriately with regard to his complaint. See **Exhibit G**.

9. All the exhibits attached hereto, except Exhibits D, G, H and L are business records of SAA, made in the ordinary course of its business, made at or near the time of the acts or events described therein by, or from information transmitted by a person a person with knowledge of the events described in the records. It was and is the regular course of business of SAA to make these records and the records are kept by SAA in the regular course of its business. Exhibits D, G, H and L are true and corrects copies of EEOC documents transmitted to SAA by the EEOC and are offered as statements or admissions made by Mr. Reed that are against his interest in this case.

10. I am prepared to testify in person as to the truth of the above statements. In accordance with Title 28 United States Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Affiant further sayeth not.

Dawn Tofuri

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

## DECLARATION MADE IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

# EXHIBIT A



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

# EXHIBIT B

SAN ANTONIO AEROSPACE SECURITY

## INCIDENT REPORT

| Report by: _Janice Johnson_ | Date & Time reported completed: _8/28/04_ |
|---|---|
| Type of incident: _SEXUAL HARASSMENT_ | Date & Time incident occurred: _8/28/04      1350_ |

Location of incident: _MAIN GUARD STATION_

Who was notified: _S/O STRICKLAND & S/O FIERROS_    When: _SAT 8/28/04_

Were Police, Fire or EMS called?    Case#

PERSONS INVOLVED:

NAME    ADDRESS    PHONE#

1. _S/O J. Johnson_
2. _S/O L. Reed_
3. _____

WITNESSES
1. _S/O W. Burts  S/O J. Roe_
2. _S/O M. Bueno_

VEHICLES INVOLVED
1. Year:____ Make/Model:_____ Body/Color:_____ LP#_____

2. Year:____ Make/Model:_____ Body/Color:_____ LP#_____

MISSING PROPERTY:
_____

DETAIL OF INCIDENT:

_I S/o Johnson was standing out side by Turistile talking to S/o burts when S/o Reed walked up and kiss me on the forehead at the time he kiss me on the forehead I was bending down over the bar. I got mad told S/o Reed, I dont know where your mouth been. I told him don't be doing that. he_

_S/o Janice Johnson_          _Janice Johnson_

OFFICER NAME (PRINT)          SIGNATURE

_____          PAGE _____ OF _____

CHIEF OF SECURITY (SIGNATURE)

EXHIBIT
**B**

SAN ANTONIO AEROSPACE SECURITY

## INCIDENT REPORT
### (CONTINUATION)

Almost got knocked out. S/O Reed started apologizing saying that he was treating me like a sister. Ya he right. I don't like S/O Reed never did and he knows it. The guards that saw what happen knew that I was very upset. S/O Reed apologize again stated that's not sexual harassment. He knew what he did was wrong then why would he say what he said. S/O Reed made me very angry I didn't appreciate what he had done. S/O Reed kept talking saying to the guards see how she is he stated twice. S/O Rae stated to S/O Reed to go to Sta 2 it is ten minutes til two. S/O Reed not paying attention he's still talking as he going through the gate I told S/O Reed you needs to go to your post and leave me alone. S/O Reed said Fuck you I don't have to leave you alone as he was walking through the gate. I went into the guards station and close the door. That's when S/O Reed came back toward the gate like he was going to do something but the gate had lock. Then he stared at me for a minute and than he went to Sta 2. but I ignored him anyway. Attention Mr. Rodriguez. You'll needs to do something about this situation or its going to get out of hand. I know he is not going to leave me alone. Also if you don't believe me its on camera.

SEE SIGNATURE BOTTOM OF PAGE 1          PAGE ____ OF _____

S/O Janice Johnson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

# EXHIBIT C

San Antonio Aerospace, L.P.

SS# - 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

@918

PERSONNEL/PAYROLL AUTHORIZATION
(Human Resources completes shaded areas)

| Name | *Levi Recd* | EE# *000635* | Position Title *Security Guard* | Dept. |
|------|------|------|------|------|

## CHANGE OF STATUS

Effective Date: _____

|  | FROM | TO |
|------|------|------|
| Position Title | | |
| Department | | |
| Shift Code | | |

Base Pay: $ _____ ÷ $ _____ Lic. $ _____ ÷ $ _____ Lic.

Other Reasons/Comments

_____ Dept. Manager/Director _____ Date

Dept. Head/Director _____ Date

Benefit Base: _____

## TERMINATION

Last Day Worked: *9-1-04*   Eff. Term Date: *9-3-04*   Pay Term Date

Reason | Code | Description *Harassment*

Eligible Rehire: YES · NO    Company Indebtedness: YES · NO
Vacation owed: _____    Deduct Benefits: _____

## LEAVE OF ABSENCE

Last Day Worked: _____   + 5 work days = Begin Date _____

Reason: Circle One
UL Personal Leave Unpaid
WCN Workers' Comp Unpaid
ML Military Leave Unpaid
LAN Medical Leave Unpaid
LADL Medical Leave Paid     thru _____

Last day worked +
30 days   100%
60 days   66.6%
90 days   50%

Expected Return: _____
Actual Return: _____

SUPERVISOR/MGR. _____ 9/2/04 Date

DEPARTMENT HEAD/DIRECTOR _____ 9/2/04 Date

EXECUTIVE _____ 9/2/04 Date

HR _____ 9-2-04 Date

VICE-PRESIDENT _____ Date

PROCESSOR _____ DATE

Form HR-301-1 Rev. 3
Page 3 of 4


EXHIBIT
C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LEVI REED, JR.,                              §
                                             §
            Plaintiff,                       §
                                             §
                                             §        CAUSE NO. SA-05-CA-186-RF
SAN ANTONIO AEROSPACE, L.P.,                 §
                                             §
                                             §
            Defendants.                      §

---

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

# EXHIBIT D

EEOC FORM 131 (5/01)

# U. S. Equal Employment Opportunity Commission

|  | PERSON FILING CHARGE |
|---|---|
| Human Resources Director<br>SAN ANTONIO AEROSPACE LP<br>9800 John Saunders Road<br>San Antonio, TX 78216 | **Levi  Reed** |

| THIS PERSON (check one or both) |
|---|
| [X] Claims To Be Aggrieved |
| [ ] Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.

**360-2004-11422**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act

[ ] The Age Discrimination in Employment Act

[ ] The Americans with Disabilities Act

[ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by  **21-OCT-04**   a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [X] Please respond fully by  **21-OCT-04**   to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by  **05-OCT-04**
   to  **Katherine S. Perez, ADR Coordinator, at  (210) 281-2506**
   If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Rodney R. Klein,
CRTI Supervisor

*EEOC Representative*

*Telephone:*  **(210) 281-7621**

**San Antonio District Office
5410 Fredericksburg Rd
Suite 200
San Antonio, TX 78229**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Sep 20, 2004 | **Pedro  Esquivel,<br>Director** | |

**EXHIBIT**

D

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 360-2004-11422 |

**Civil Rights Div Texas Workforce Cm**
State or local Agency, if any
and EEOC

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Mr. Levi  Reed | (210) 670-9318 | 04-13-1945 |

| Street Address | City, State and ZIP Code |
|---|---|
| 9711 Green Plain Drive,  San Antonio, TX 78245 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, | Phone No. (Include Area Code) |
|---|---|---|
| SAN ANTONIO AEROSPACE LP | 201 - 500 | (210) 293-2688 |

| Street Address | City, State and ZIP Code |
|---|---|
| 9800 John Saunders Road,  San Antonio, TX 78216 | |

| Name | No. Employees, | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 11-16-2003 | 09-04-2004 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was intimidated and harassed for the last 300 days by David Young, Lead Supervisor when he would see me in the company vehicle and tell me to walk, not believe me when I would explain I did my job and believe another employee who actually did not do the job; accuse me of tardiness and write me up, whereas others who were tardy were not written up, left me stranded when I had car problems and emptied my desk, kicked my paperwork and phone charger. He admitted to me that he was prejudice.

When I tried to report the discrimination through an incident report, it was refused by John Milton, Director of maintenance, David Rodriguez, Chief of Security and J. Ferris, Security Lead.

I feel I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Sep 16, 2004          _Levi Reed Jr._ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT E

SAN ANTONIO AEROSPACE SECURITY

# INCIDENT REPORT

PAGE 1 OF 1

| Report by: | Date & Time reported completed: |
|---|---|
| LEVI REED JR | 7-27-04 19:00 |
| Type of incident: | Date & Time incident occurred: |
| RACIAL DISCRIMINATION | |
| Location of incident: UNIT #5 | |
| Who was notified: David Rodriquez | When: ASAP |
| Were Police, Fire or EMS called? | Case# |

**PERSONS INVOLVED:**
NAME                    ADDRESS                    PHONE#
1. David Young 2nd Shift Lead Supervisor
2.
3.

**WITNESSES**
1.
2.

**VEHICLES INVOLVED**
1.Year         Make/Model:              Body/Color:            LP#
2.Year         Make/Model:              Body/Color:            LP#

**MISSING PROPERTY:**

**DETAIL OF INCIDENT:**

5/00. Young Came To my workplace using Intimidating Remarks & Racial Discrimination

LEVI REED JR
OFFICER NAME (PRINT)                    SIGNATURE

CHIEF OF SECURITY (SIGNATURE)                    DATE

**EXHIBIT**

**E**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

# EXHIBIT F

TO:  HR DEPT
FROM:  DAVID RODRIGUEZ

SUBJ:  LEVI REED

On 27 Jul 04, Security Officers Levi Reed and David Young (Lead) had an argument over some procedural matters.  At that time, comments were made by both individuals that were inappropriate.  Later, that evening S/O Reed contacted me to lodge a complaint on S/O Young.  I arrived on property, informed S/O Reed to put everything that was said by S/O Young in writing.

Comments made:

S/O Reed, " Are you prejudice?"
S/O Young, "Yes, I'm prejudice against ignorant people."

On 28 Jul 04, S/O's Young and Reed were brought in to Mr. John Melton's office , both individuals were counseled on their behavior.  S/O D. Young apologized to Mr. Reed for the comment he made, both individuals agreed that they were both upset and in the moment of anger those comments were made but really didn't mean anything by them. Mr Young and Mr. Reed shook hands prior to leaving Mr. Melton's office.  Mr Melton informed S/O Reed if he still wanted to pursue this matter we could go to HR, he stated he was happy with the outcome and tore up his complaint.

In order not create any hostility within the guard unit, Mr Melton and I decided for the best interest of the company to demote S/O Young from his Lead position to regular guard.


Personnel involved:  Levi Reed
                     David Young
                     Juan Fierros
                     David Rodriguez
                     John Melton



David Rodriguez
Security Administrator



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

# EXHIBIT G



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio District Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
(210) 281-7600
TTY (210) 281-7610
FAX (210) 281-2522

Mr. Levi Reed
9711 Green Plain Drive
San Antonio, TX 78245

RE:    Charge No. 360-2004-11422
       Respondent: San Antonio Aerospace

Dear Mr. Reed:

The above referenced charge of employment discrimination will soon be reviewed by management personnel of this office to decide whether the investigation of this charge will continue. The investigation continues to a point that, based on the evidence available, a reasonable decision can be made that further investigation is not likely to result in finding a violation of the statute.

You allege being discriminated against because of your race, Black, in that you were intimidated and harassed by David Young, Lead Supervisor. You stated that he admitted to you that he was prejudice. When you tried to report the discrimination through an incident report, it was refused by John Milton, Director of Maintenance, David Rodriguez, Chief of Security, and J. Ferris, Security Lead.

The evidence shows that on July 27, 2004, you submitted an incident report regarding racial discrimination against David Young. A copy of the signed incident report was provided by San Antonio Aerospace. The incident report was processed accordingly and on July 28, 2004 you and Mr. Young were called into the office of John Melton. Mr. Melton and Mr. Rodriguez interviewed both of you regarding the incident. During the investigatory interview, Mr. Young denied that he had racially harassed your. Mr. Young stated that when he was disciplining you for failing to follow proper procedures, you asked whether he was "prejudiced" and he replied, "yes, I'm prejudiced against ignorant people." This admission by Mr. Young is not evidence of discrimination based on race.

After the interview, Mr. Young apologized to you for the comment. As a result of the investigation, Mr. Melton and Mr. Rodriguez determined that, although they did not believe that Mr. Young had, in fact, harassed or discriminated against you based on race, they nonetheless were concerned, from a supervisory standpoint, with the tone and manner of his conversation and decided to relieve him of responsibilities as an Acting Lead and transferred him to a different shift to prevent further hostilities. A copy of the interview done on July 28, 2004 was submitted as evidence.

Based on this information, San Antonio Aerospace took immediate and appropriate action to resolve your complaint.



EXHIBIT
G

**S.A.A. 093**

Furthermore, San Antonio Aerospace stated that you were discharged on September 4, 2004 for sexually harassing a co-worker. The evidence shows that on August 28, 2004, the female co-worker submitted an incident report alleging she was sexually harassed by you. The incident was substantiated after interviewing witnesses and reviewing a security videotape which recorded the incident. A copy of the incident report and videotape were submitted as evidence.

Based on our conversation of November 12, 2004, I have enclosed a copy of the attorney referral list since you misplaced the one that was previously given to you and mentioned obtaining another copy.

Prior to EEOC's decision concerning continued investigation of this charge, you have this opportunity to submit a rebuttal to the above information or any new information that you have and that you wish to be included in the investigative file upon which management will review and base its decision. If you wish to submit any additional information, it must be received in writing **no later than November 29, 2004.**

If EEOC decides to discontinue the investigation of this charge, you will receive a dismissal notice along with information about your rights to pursue this matter in U.S. District Court.

Sincerely,

Mercedes Ramirez
Federal Investigator
(210) 281-7687

Nov. 15, 2004
Date

S.A.A. 094

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT H

Ien Reed
9711 Green PlAIN DR
San Antonio 78245

To Mercedes Ramirez
Federal Investigator

EXHIBIT
H

S.A.A. 095

Jevis Reed
9711 Green plain DR
San Antonio TX 78245

" Att: Mecedes Ramirez "
US Equal Employment opportunity Commi-
San Antonio Dist office
5410 Fredericksburg Rd Suite #200
San Antonio TX, 78229

11-29-2004

S.A.A. 089

Charge # 360-2004-11422                    11-29-2004

Rebuttal
Levi Reed JR
9711 Green Plain DR
San Antonio 78245

2004 NOV 29

I was call To Mr Rodriquez office, Mr Young
was being Interview Mr Rodriquez ask for
My side of the Story I Told him I call Base
To Report my Assign post unit-s needed to Be
Close Because my Assign aircraft had Return from
A Test Flight an had Taxi To another Hanger #7
While use A 2way Radio Telling Them I had to Relocate
In order to Protect + Secure The Air Plane my young
said I was Breaking Doing Transmission a That
he was Driving To my Area I was following Proper
Procedures There was no Reason to Disciplin me
However Mr Young Start Hollowing at me About what was
my Duties over + over from The look on his Face
I Feared for my Safty he was in my Face Screaming
Asking me what my Assign. Post was This was when
I Stated he act like he was prejudice Mr Young said "Yes"
I Am prejudice This was when he stop hollowing
An stated against Eqnorant. Dealizeing what he
had admitted Telling I Stop A passer By with A Cell
Phone An Cell Mr Rodriquez I have In The Past
Told Mr Rodriquez This man is Racial,
In Evidence Mr Young Said I Mr Reed ask him
wheather he was prejudiced. This is False?

Evidence: I Submitted An Incident Report Regarding
Racial Discrimination Against D Young on August 8, 2004
To Mrs Holly Gibney Title HR San Antonio Areospace
I ask Holly If I Could Submitte my Incident Report
for The Record She said yes However They Told
her this Matter was over Then she Told me
To put it on her Desk on This Date August 8, 2004
Managment had not came in Contack with
This Incident Rexbut It was not Sign

Evidence, shows That on July 27, 2004 I lew Reed
submitted an Incident Report an That July 28 2004
The Incident Report Processed accordingly This Statement
must Be "Address" an or Interview Because said Copy
Of Incident was in my pocession I Put Back in
My pockett after trying To Put it in Mr Milton
hand he Turn my offer down This Act left
Me concened This happen A few minited After
Interview July 28 2004 with Mr Young & Myself
we were leaving Mr Milton office, who ever Sign
The Incident Report Intended To give false
impression

the
After Interview A Security Guard Staff Meeting
was "in session" in a Meeting Room Down Stairs
All Security Guard were assign to Different Shift
This move to prevent Further hostilities Did Not
Considite appropriate Action To Resolve My Complaint
mr, young was still Parking in Managent Area
An his pay is mostly likely The same

After The STAFF Meeting I Also Ask
Superviser lead Mr. Ferris To sign An
Submitte my Incident Report Regarding
Racial Discrimination Against David Young
Mr Ferris told me in front of Another
Security Guard who was in The office "Base"
with us. That he wanted Nothing to
Do with my Complaint Mr. Ferris is The
Person who hired me to work For S.A.A.

Furthermore: My Charge is Not Base on
Being Discharge From San Antonio Aerospace For
August 28 2004 Incident
My Charge is Base on being Harassed & Intimate By
David Young For The past Year An A Half, over 300 days
Date 11-29-2004

Sincerely,

Levi Reed JR
(210) 670-93-18

S.A.A. 092

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT I

## EQUAL EMPLOYMENT OPPORTUNITY AND TREATMENT POLICY

SAA is committed to equal employment opportunity for all qualified persons. We recognize and appreciate each employee's work and contribution to our success as a Company. We believe that all employees are entitled to be treated fairly and with respect.

We provide equal opportunity and equal treatment in all aspects of employment to all employees and to all applicants for employment without regard to their race, color, religion, sex (including pregnancy, childbirth and related medical conditions), national origin, age (40 and over), citizenship, physical or mental disability, or military obligations. We will make reasonable accommodations to ensure equal employment opportunities for qualified disabled individuals. A disabled individual is qualified for a job if he or she can, with or without reasonable accommodation, perform the essential job duties.

We expect all employees, including all supervisors and managers to respect the feelings of fellow employees, and to treat fellow employees in a courteous and professional manner. We will not tolerate any form of harassment of our employees. Harassment includes any hostile, intimidating, offensive, insulting or demeaning words or conduct. Specifically forbidden is harassment because of a person's sex, race, color national origin, religion, age or disability. Examples of prohibited harassment include offensive, insulting or demeaning remarks, gestures, jokes, pranks, slurs and graffiti about a person's sex, race, color, national origin, religion, age or disability. Harassment also includes managers' or supervisors' use of threatening or intimidating words or actions in dealing with employees under his or her supervision, including any demeaning or insulting comments about an employee or about an employee's job performance related to the employee's race, sex, national origin, religion, age or disability. Harassment of our employees is forbidden and will result in disciplinary action, which may include discharge.

We maintain a professional workplace that is free from sexual harassment. Managers and supervisors shall not threaten or insinuate that an employee's refusal to submit to sexual advances or any other form of sexual harassment will adversely affect the employee's continued employment, pay, benefits, working conditions or job opportunities. Similarly, managers and supervisors shall not state or imply that submission to sexual advances or any other form of sexual harassment will in any way enhance an employee's employment opportunities, hours, pay, benefits, or any other terms or conditions of employment. No manager or supervisor has any authority to take any adverse action against an employee, including discharge, demotion, or reducing the employee's work hours, benefits or pay, because the employee refuses to submit to sexual advances or any other form of sexual harassment. Similarly, no manager or supervisor has any authority to give an employee preferential treatment because the employee does submit to sexual advances or any other form of sexual harassment.

Any verbal or physical conduct of a sexual nature that could contribute to a hostile or offensive workplace for any employee, whether committed by a manager, a supervisor, an employee or any

3



other person (including a contractor or customer), are prohibited. *Examples* of prohibited conduct include:

> Use of profane or vulgar language;
> Unwelcome sexual flirtations, sexual advances or sexual propositions;
> Sexually-oriented or suggestive jokes or comments;
> Comments about a person's body or sex life;
> Sexually degrading words, including sexual slang, used to describe any person;
> Physical contact of a sexual nature, including unwelcome or inappropriate touching, pinching, patting, grabbing or hugging;
> The display in the work place of sexually oriented or suggestive pictures or objects;
> Sexually suggestive or vulgar graffiti, including words and drawings;
> A supervisor's or manager's comments suggesting that an employee will suffer employment consequences, such as demotion, discharge or denial of a pay raise, if s/he does not agree to sexual demands or if s/he complains about offensive sexual behavior or any other form of harassment;
> Comments suggesting that an employee will receive favorable employment treatment in exchange for sexual favors.

## Complaint Procedure

You *must* promptly report any incident of harassment or any other violation of our EEO/Harassment Policy directly to our Manager of Human Resources. You are encouraged to report any harassment or violation of our Policy to your manager or supervisor, who has a responsibility to prevent harassment and to stop it if it occurs. However, to ensure that SAA can promptly investigate and, if appropriate, take prompt and effective action, it is essential that you promptly notify our Manager of Human Resources. Reporting it to your manager or supervisor is *not* sufficient.

All managers and supervisors have a responsibility to enforce our EEO/Harassment Policy. Our managers' and supervisors' responsibility includes immediately stopping any harassment that is observed or reported, and reporting any violations directly to the Manager of Human Resources. Failure to do so will result in disciplinary action, which may include discharge.

The Manager of Human Resources will thoroughly investigate all complaints. The employee may be required to prepare a written report detailing the alleged harassment or any other violation of our policy, and to sign the report. To the extent practicable, the investigation will be confidential with due regard for the sensitive nature of such complaints. If, after completing our investigation, we determine that a complaint is valid, we will take prompt and appropriate disciplinary action against the person or persons engaging in such conduct. Depending upon the severity of the violation of our policy, appropriate discipline may be discharge.

4

We encourage you to come forward if you have a complaint and we assure you that no adverse action will be taken or allowed against any employee whom in good faith reports harassment or any other violation of our EEO Policy.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEVI REED, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CAUSE NO. SA-05-CA-186-RF |
| SAN ANTONIO AEROSPACE, L.P., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

**DECLARATION MADE IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

# EXHIBIT J



# Employee
# Handbook
# May 2002
# Preliminary Edition

# SAN ANTONIO AEROSPACE, L.P.

**EXHIBIT**

**J**

# TABLE OF CONTENTS

Page

WELCOME TO ST. SAN ANTONIO AEROSPACE

INTRODUCTION.................................................................................... 1

SAA's MISSION STATEMENT ............................................................. 2

EQUAL EMPLOYMENT OPPORTUNITY AND TREATMENT POLICY .................. 3

YOUR RESPONSIBILITIES AND SUCCESS ......................................... 5
    WHAT SAA EXPECTS OF YOU ................................................ 5
    WHAT YOU CAN EXPECT OF SAA .......................................... 6

EMPLOYMENT........................................................................................ 6
    ORIENTATION ......................................................................... 6
    TRAINING PERIOD ................................................................. 7
    PERSONAL DATA ................................................................... 7
    NEPOTISM ................................................................................ 7
    EMPLOYMENT REFERENCES AND VERIFICATION ................. 7
    EMPLOYEE RESIGNATION AND TERMINATION/CLEARANCE
    PROCEDURE ............................................................................ 8
    EXIT INTERVIEWS .................................................................. 8

EMPLOYEE BENEFITS ......................................................................... 8
    GROUP MEDICAL INSURANCE ............................................. 8
    MAIL ORDER PRESCRIPTIONS ............................................. 9
    DENTAL INSURANCE ............................................................. 9
    LIFE INSURANCE ................................................................... 9
    OTHER BENEFITS ................................................................... 9
        401(k) Retirement Plan ...................................................... 9
        FLEX Benefit Plan ............................................................. 9
        Banking/Direct Deposit ...................................................... 9
        Credit Union ....................................................................... 9
    COBRA ..................................................................................... 10
    SICK LEAVE ............................................................................ 12
    SHORT TERM DISABILITY PAY ............................................. 12
    LONG TERM DISABILITY INSURANCE .................................. 13
    PAID HOLIDAYS ...................................................................... 13
    PAID VACATIONS ................................................................... 14

PERSONAL LEAVE ............................................................................... 14
    UNPAID LEAVE OF ABSENCE ............................................... 14
    MEDICAL LEAVE OF ABSENCE ............................................ 15

FAMILY AND MEDICAL LEAVE ....................................................... 15
MILITARY LEAVE OF ABSENCE ...................................................... 17
BEREAVEMENT LEAVE ................................................................. 17
JURY LEAVE ................................................................................. 18

HOURS OF WORK AND PAY ............................................................ 18
    TIME CARDS/TIME CLOCKS ......................................................... 18
    BUSINESS TRIPS ........................................................................ 18
    OVERTIME .................................................................................. 19
    SHIFT DIFFERENTIAL .................................................................. 19
    HOLIDAY PAY ............................................................................. 19
    WORK WEEK/WORK HOURS/LUNCH .............................................. 20
    REPORTING FOR WORK/LEAVING WORK ....................................... 20
    CHANGE IN STATUS OR PAY ........................................................ 20
    GARNISHMENTS ......................................................................... 21
    PAYDAYS AND PAYCHECKS ......................................................... 21
    CONFIDENTIALITY OF EMPLOYEE RECORDS ................................. 21

ATTENDANCE/ABSENTEEISM ......................................................... 21
    ATTENDANCE ............................................................................. 21
    NOTIFICATION OF ABSENCE ....................................................... 22
    VOLUNTARY QUIT ...................................................................... 23
    TARDINESS ................................................................................ 23

GENERAL ADMINISTRATION ......................................................... 23
    COMMUNICATION ...................................................................... 23
    OPEN DOOR POLICY ................................................................... 24
    PERFORMANCE APPRAISALS ...................................................... 24
    PERSONAL PROPERTY ................................................................ 24
    PARKING ................................................................................... 24
    LUNCHROOMS/BREAKROOMS ..................................................... 25
    DRUG/ALCOHOL POLICY ............................................................. 25
    CONFLICT OF INTEREST POLICY ................................................. 26
    STANDARDS OF CONDUCT .......................................................... 26

EMPLOYEES MISCONDUCT ............................................................ 27

INSUBORDINATION ....................................................................... 29

DISHONESTY ................................................................................. 29

LOST OR DAMAGED PROPERTY ...................................................... 29

INVESTIGATION OF MISCONDUCT ................................................. 30

EMPLOYEE DISCIPLINE ............................................................................................ 30
     GRIEVANCE PROCEDURE ................................................................................ 31
     POLICY MANUAL CONTROL ........................................................................... 31
     BUSINESS EXPENSE REIMBURSEMENT ...................................................... 31
     IDENTIFICATION CARDS AND VISITORS ..................................................... 32
     SOLICITATIONS AND DISTRIBUTIONS. ......................................................... 32
     HANGAR SECURITY ......................................................................................... 32
     PERSONAL APPEARANCE ................................................................................ 33
     UNIFORMS ........................................................................................................... 33

SAFETY ......................................................................................................................... 33
     WORKERS' COMPENSATION ............................................................................ 35
     HOUSEKEEPING ................................................................................................. 35
     SMOKING .............................................................................................................. 35

TRAINING/EDUCATION ............................................................................................. 36

## EQUAL EMPLOYMENT OPPORTUNITY AND TREATMENT POLICY

SAA is committed to equal employment opportunity for all qualified persons. We recognize and appreciate each employee's work and contribution to our success as a Company. We believe that all employees are entitled to be treated fairly and with respect.

We provide equal opportunity and equal treatment in all aspects of employment to all employees and to all applicants for employment without regard to their race, color, religion, sex (including pregnancy, childbirth and related medical conditions), national origin, age (40 and over), citizenship, physical or mental disability, or military obligations. We will make reasonable accommodations to ensure equal employment opportunities for qualified disabled individuals. A disabled individual is qualified for a job if he or she can, with or without reasonable accommodation, perform the essential job duties.

We expect all employees, including all supervisors and managers to respect the feelings of fellow employees, and to treat fellow employees in a courteous and professional manner. We will not tolerate any form of harassment of our employees. Harassment includes any hostile, intimidating, offensive, insulting or demeaning words or conduct. Specifically forbidden is harassment because of a person's sex, race, color, national origin, religion, age or disability. *Examples* of prohibited harassment include offensive, insulting or demeaning remarks, gestures, jokes, pranks, slurs and graffiti about a person's sex, race, color, national origin, religion, age or disability. Harassment also includes managers' or supervisors' use of threatening or intimidating words or actions in dealing with employees under his or her supervision, including any demeaning or insulting comments about an employee or about an employee's job performance related to the employee's race, sex, national origin, religion, age or disability. Harassment of our employees is forbidden and will result in disciplinary action, which may include discharge.

We maintain a professional workplace that is free from sexual harassment. Managers and supervisors shall not threaten or insinuate that an employee's refusal to submit to sexual advances or any other form of sexual harassment will adversely affect the employee's continued employment, pay, benefits, working conditions or job opportunities. Similarly, managers and supervisors shall not state or imply that submission to sexual advances or any other form of sexual harassment will in any way enhance an employee's employment opportunities, hours, pay, benefits, or any other terms or conditions of employment. No manager or supervisor has any authority to take any adverse action against an employee, including discharge, demotion, or reducing the employee's work hours, benefits or pay, because the employee refuses to submit to sexual advances or any other form of sexual harassment. Similarly, no manager or supervisor has any authority to give an employee preferential treatment because the employee does submit to sexual advances or any other form of sexual harassment.

Any verbal or physical conduct of a sexual nature that could contribute to a hostile or offensive workplace for any employee, whether committed by a manager, a supervisor, an employee or any

3

other person (including a contractor or customer), are prohibited.  *Examples* of prohibited conduct include:

> Use of profane or vulgar language;
> Unwelcome sexual flirtations, sexual advances or sexual propositions;
> Sexually-oriented or suggestive jokes or comments;
> Comments about a person's body or sex life;
> Sexually degrading words, including sexual slang, used to describe any person;
> Physical contact of a sexual nature, including unwelcome or inappropriate touching, pinching, patting, grabbing or hugging;
> The display in the work place of sexually oriented or suggestive pictures or objects;
> Sexually suggestive or vulgar graffiti, including words and drawings;
> A supervisor's or manager's comments suggesting that an employee will suffer employment consequences, such as demotion, discharge or denial of a pay raise, if s/he does not agree to sexual demands or if s/he complains about offensive sexual behavior or any other form of harassment;
> Comments suggesting that an employee will receive favorable employment treatment in exchange for sexual favors.

### Complaint Procedure

You *must* promptly report any incident of harassment or any other violation of our EEO/Harassment Policy directly to our Manager of Human Resources.  You are encouraged to report any harassment or violation of our Policy to your manager or supervisor, who has a responsibility to prevent harassment and to stop it if it occurs.  However, to ensure that SAA can promptly investigate and, if appropriate, take prompt and effective action, it is essential that you promptly notify our Manager of Human Resources.  Reporting it to your manager or supervisor is *not* sufficient.

All managers and supervisors have a responsibility to enforce our EEO/Harassment Policy.  Our managers' and supervisors' responsibility includes immediately stopping any harassment that is observed or reported, and reporting any violations directly to the Manager of Human Resources.  Failure to do so will result in disciplinary action, which may include discharge.

The Manager of Human Resources will thoroughly investigate all complaints.  The employee may be required to prepare a written report detailing the alleged harassment or any other violation of our policy, and to sign the report.  To the extent practicable, the investigation will be confidential with due regard for the sensitive nature of such complaints.  If, after completing our investigation, we determine that a complaint is valid, we will take prompt and appropriate disciplinary action against the person or persons engaging in such conduct.  Depending upon the severity of the violation of our policy, appropriate discipline may be discharge.

4

We encourage you to come forward if you have a complaint and we assure you that no adverse action will be taken or allowed against any employee whom in good faith reports harassment or any other violation of our EEO Policy.

## YOUR RESPONSIBILITIES AND SUCCESS

The written information you were provided when you were hired, and the orientation sessions you attended or will attend, should help you get a feel for what your Company, SAA, is all about. As you begin to feel a part of us, we hope you like what you have heard and seen...we hope you realize the importance of your job to the Company. You are going to help us make things happen...to make this a better place to work. Since we are "in it together," let's take a closer look at our mutual expectations.

### *WHAT SAA EXPECTS OF YOU*

1.  We expect you to be on time for work every day. We expect you to be cooperative and to get along with your co-workers. We believe that all employees are entitled to be treated fairly and with respect. We expect you to treat your co-workers and supervisors in this manner. This is all a part of teamwork. When you don't come to work or fail to cooperate with others, someone else has to pull your load.

2.  We expect you to give 100% of your skill, effort and attention to your work...to be conscientious toward all phases of your job. This means working safely, concentrating, giving your best abilities to whatever job you may be doing, improving quality and maintaining a positive attitude toward your job, your manager and your fellow employees. Simply put -- we expect you to CARE.

3.  We expect you to understand and value the importance of quality in all that we do. Our reputation as a Company that cares about producing a quality service is earned by employees like you. You are helping build your own job security when you keep quality in mind. That may seem like a lot to you as a new SAA employee, but we believe you can expect a return on your investment.

4.  We expect you to represent SAA in a positive and favorable manner in dealing with your community and your friends. You can be a vital force in establishing a good name and building the Company's good will — not only to those close to you but to our customers, vendors and other businesses with whom you come into contact.

5.  We expect you to become thoroughly familiar with our policies, procedures, standards of conduct and work rules, and to comply with the letter and spirit of these important job requirements.

Remember...IT'S YOUR BUSINESS, TOO.

*WHAT YOU CAN EXPECT OF SAA*

1.  Fair treatment and respect for your individual dignity and worth, both on and off the job.

2.  A job that offers you competitive pay and an opportunity for growth and development for as long as our customers are satisfied.

3.  Good working conditions, including a clean, safe and well-equipped facility.

4.  Benefits that will help you and your family have a better life and sense of financial security.

5.  Supervisors who are interested in your development and growth, who are technically and professionally qualified to help you get your job done in the safest and most efficient way, and who are leaders who can help you better understand the reasons behind our policies, practices, procedures and work methods.

6.  Communication to keep you informed on the Company's business, its plans, progress and how you and your family may be affected.

7.  PRIDE. This is perhaps the most tangible benefit you receive. Knowing that when you finish your job at the end of the day, you have accomplished something worthwhile and made a difference, individually and as a team member. PRIDE in what you do. PRIDE in what your team has done. PRIDE in SAA quality. PRIDE in yourself.

## EMPLOYMENT

*ORIENTATION*

When you begin your employment with SAA, you must complete an orientation program to acquaint you with SAA's philosophy and policies, as well as other job-related information. This is normally scheduled for your first day of employment.

*TRAINING PERIOD.*

All new employees and current employees promoted to different positions, including part-time and full-time employees, will go through a 90-day training period. Managers normally give all hourly employees' monthly performance reviews, and a written performance review at the conclusion of the 90-day training period.

6

## PERSONAL DATA

You must notify the Human Resources Department immediately of any change in your name, address, phone number, marital status, number of dependents or beneficiary. This is very important to you and your family. There is a "Change of Personal Information" form available from Human Resources for this purpose.

## NEPOTISM

In considering a current employee's friends and relatives for employment, SAA will follow its normal hiring procedures. Relatives of current employees must compete with all other applicants for the same position.

Generally, related employees will not be permitted to occupy positions in which one relative supervises another, in which one relative is in a position to affect the compensation of another, or in which one relative could influence employment decisions affecting another. Generally, related employees will not be permitted to occupy positions that, in SAA's judgment, may give rise to an actual, apparent or potential conflict of interest.

If, during the course of employment, two or more employees become related through marriage and occupy positions inconsistent with our nepotism policy, SAA may require one or both of the employees to transfer to different positions.

"Relatives" and "related employees" include husbands and wives, parents and children, grandparents and grandchildren, brothers and sisters, aunts and uncles, nieces and nephews, and any other person related by blood or marriage to the employee or his or her spouse.

## EMPLOYMENT REFERENCES AND VERIFICATION

SAA generally does not give employment references. No manager, supervisor, or other Company representative is authorized to give an employment reference on behalf of the Company, or to release any other information concerning your employment to your fellow employees or to anyone outside the Company.

The Human Resources Department will respond to telephone inquiries seeking verification of employment by confirming position and length of employment only. With your signed request, we will provide written verification of your dates of employment, your job title, and your rate of pay.

## EMPLOYEE RESIGNATION AND TERMINATION/CLEARANCE PROCEDURE

SAA has a termination procedure when an employee resigns or when an employee is terminated. The termination procedure assures that a terminating employee is properly processed, that the necessary records are prepared, that Company property is accounted for, and that proper payroll action is taken. The employee's manager will complete the Personnel/Payroll Authorization Form for a terminating employee.

If an employee resigns, the reasons for the resignation should be discussed with the employee's manager. To properly resign, the employee should submit written notice of resignation *at least two weeks* before the final working day and should include the reasons for the resignation. The Company will decide whether to allow the employee to work the entire two-week notice period, or to treat the resignation as effective immediately or at an earlier date.

### EXIT INTERVIEWS

The Human Resources Department conducts an exit interview with all employees who terminate employment with SAA for any reason. This is necessary to assure that all Company property is returned, any money owed to the Company is repaid, any money the Company owes the employee is paid, and that SAA obtains any information from the employee that may be helpful in improving working conditions for our employees. Employees are encouraged to provide a free flow of information in these exit interviews both for the benefit of the employee and the Company.

### EMPLOYEE BENEFITS

The following is a brief summary of our employee benefits. Except as described in the plan documents for a particular benefit plan, SAA has no contractual obligation to provide these benefits, and SAA has discretion to administer the benefits in a manner SAA determines is in the best interest of the Company and its employee.

Our benefits program is more completely described in the benefits package that you receive from the Human Resources Department, which includes the summary plan, description for certain benefits. For a better understanding of our benefits program, including eligibility requirements, you should review the information in the package carefully. Moreover, the nature, extent, administration and eligibility requirements for certain benefits are controlled by the terms of the complete group insurance policies or benefit plan documents for these benefits. You may review a copy of these documents in the Human Resources Department. Although we hope to continue or even improve benefits over time, we may change or even discontinue any benefit at any time if we deem necessary.

8

*GROUP MEDICAL INSURANCE (TO BE DETERMINED)*

*MAIL ORDER PRESCRIPTIONS (TBD)*

*DENTAL INSURANCE (TBD)*

*LIFE INSURANCE*

Basic Group Term Life (TBD)

Supplemental Term Life (TBD)

Dependent Term Life (TBD)

*OTHER BENEFITS*

As with our insurance benefits, the following is only a brief summary of various benefits. You should see the Benefits Administrator for more detailed information, costs, enrollment and options.

401(k) Retirement Plan (TBD)

FLEX Benefit Plan (TBD)

Banking/Direct Deposit (TBD)

Credit Union (TBD)

9

## COBRA (Continuation of Group Medical Insurance)

You or your dependents may be eligible to continue your health benefits at group rates if certain events occur that would otherwise result in a termination of your coverage. If your employment is terminated or your hours of work are reduced for any reason other than gross misconduct, SAA will provide you with complete information about your COBRA rights. When certain other situations make a family member ineligible to continue regular family coverage, such as divorce, a child's loss of dependency status, and several other events, YOU must notify SAA, so we can advise you and your dependent(s) of their rights under COBRA. These events and your rights are explained below:

### Continuation Coverage Rights:

On April 7, 1986, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) was signed into law (Public Law 99-272, Title X). Under COBRA, most employers sponsoring group health plans must offer covered workers and their families the opportunity for a temporary extension of health coverage [called "continuation coverage"] at group rates in certain instances where coverage under the plan would otherwise end. This notice is intended to inform you, in a summary fashion, of your rights and obligations under the continuation coverage provisions of the COBRA law. Both you and your spouse should take the time to read this notice carefully.

If you are an employee of SAA who is covered by SAA's Group Health Insurance Plan, or you are otherwise covered under the plan by virtue of your service to SAA, you have a right to choose continuation coverage if you lose your group health coverage because of a reduction in your hours of employment or the termination of your employment (for reasons other than gross misconduct on your part).

If you are the spouse of an employee or other worker covered by SAA's Group Health Insurance Plan, you have a right to choose this continuation coverage for yourself if you lose group health coverage under SAA's Group Health Insurance Plan for any of the following four reasons:

1)   The death of your spouse;
2)   A termination of your spouse's employment (for reasons other than gross misconduct) or reduction in your spouse's hours of employment;
3)   Divorce or legal separation from your spouse; or
4)   Your spouse applies for and becomes entitled to Medicare.

In the case of a dependent child of an employee or other worker covered by SAA's Group Health Insurance Plan, he or she has the right to continuation coverage if group health coverage under SAA's Group Health Insurance Plan is lost for any of the following five reasons:

1)   The death of a parent;
2)   The termination of a parent's employment (for reasons other than gross misconduct) or reduction in a parent's hours of employment with SAA.

10