THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
FEB - 8 2008
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | | |
|---|---|---|
| LEVI REED, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-05-CA-186-RF |
| | § | |
| SAN ANTONIO AEROSPACE, L.P., ET. AL., | § | |
| Defendants. | § | |
| | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant San Antonio Aerospace, L.P.'s ("Defendant") Motion for Summary Judgment (Docket No. 48), filed January 18, 2007; Plaintiff Levi Reed's ("Plaintiff") Response (Docket No. 54), filed March 7, 2007; and Defendant's Reply (Docket No. 55), filed March 13, 2007. The parties appeared before the Court at a hearing on January 30, 2008. After considering the parties' briefing and arguments at the hearing, the facts of the case, and the applicable law, the Court is of the opinion Defendant's Motion should be GRANTED.

As a separate matter, the Court previously issued an Order granting a motion for continuance, or in the alternative, to stay the case pending Counsel's release from medical treatment (Docket No. 66). To the extent the case was stayed as a result of that Order, the stay was lifted when the parties appeared before Court at the January 30, 2008 hearing.

### SUMMARY

Plaintiff filed the instant action, alleging Defendant[1] discriminated against him in violation

---

[1] Initially, there were multiple named defendants in the case. Previously, the Court issued an Order granting dismissal of all defendants except for San Antonio Aerospace, L.P. *See* Docket No. 21.

of Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. § 2000(e) *et seq*. Plaintiff, an African-American male, claims that Defendant's alleged discriminatory conduct was based on Plaintiff's membership in a protected class, and the discrimination created a hostile work environment. Defendant argues summary judgment is appropriate because Plaintiff cannot establish a *prima facie* case of discrimination alleging hostile work environment. The Court agrees, and grants Defendant's Motion for Summary Judgment for the reasons set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Because Defendant has moved for summary judgment, the Court construes the facts in the light most favorable to Plaintiff.[2] Plaintiff was hired as a security guard by Defendant on or about December 21, 2002, to guard an aircraft five days a week.[3] Plaintiff explains Justin Roe ("Mr. Roe") was his supervisor for six months and repeatedly wrote him up for being tardy, while Caucasian and Hispanic employees who were also tardy were not written up. This created mental stress for Plaintiff. Mr. Roe was demoted in 2005, and Andre Walker became Plaintiff's supervisor thereafter for approximately three months. Although Mr. Walker also wrote up Plaintiff, it occurred less often.

From the time Plaintiff was employed until August, 2004, David Young ("Supervisor Young") was the Lead Supervisor for all of the shifts and all of the other Lead Supervisors. Beginning in mid-2003, Supervisor Young informed Plaintiff that he was not permitted to do

---

[2] *See Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988); *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[3] Docket No. 54 at 6.

anything unless it "came through" him.[4] Although Supervisor Young was not Plaintiff's direct supervisor, Plaintiff explains that Supervisor Young had arranged to control all of Plaintiff's activities.[5] According to Plaintiff, Supervisor Young told him what to do, wrote him up, prevented him from taking breaks at work, broke Plaintiff's furniture, and treated Plaintiff in a demeaning manner.[6] Furthermore, David Rodriguez, the Chief of Security, did not prohibit Supervisor Young's behavior, and did not file a report on four of the five occasions that Plaintiff complained to him about it.

Plaintiff refers to three specific incidents involving Supervisor Young as evidence that Plaintiff was subjected to a hostile work environment. On the first occasion, Plaintiff explains he was following proper procedures in filing a report, when Supervisor Young became angry. Supervisor Young told Plaintiff he intended to move Plaintiff's desk and repeatedly yelled, "'What is your assignment post?'"[7] Plaintiff explains he then became fearful that Supervisor Young was going to attack him, and Plaintiff tried to give Mr. Rodriguez an incident report, but he would not accept it. Plaintiff then filed an incident report with Human Resources on July 27, 2004, the day the incident occurred.

Plaintiff also mentions an example where Supervisor Young wrote up Plaintiff for abandoning his post. In that instance, Plaintiff could not leave his shift until he was replaced by

---

[4] *Id.* at 7.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 8.

another security guard. Even though Plaintiff insisted he could not leave his shift and his replacement had not arrived, Kevin Strickland, another supervisor, instructed Plaintiff to leave his post. When Supervisor Young eventually arrived, he wrote a report claiming Plaintiff had abandoned his post.

Finally, the third incident complained of involves a statement made by Supervisor Young. Plaintiff confronted Supervisor Young for falsifying a report and stated that Supervisor Young acted as though he was prejudiced. According to Plaintiff, Supervisor Young responded "Yes, I am prejudiced."[8] It appears that three lead supervisors investigated this incident after Plaintiff filed an incident report. While they concluded Supervisor Young's conduct was not racially motivated, they did conclude it was improper and transferred him to another shift to prevent further contact between him and Plaintiff.[9]

Plaintiff initiated this action by filing his Complaint on March 28, 2005. It appears the crux of Plaintiff's complaint is a racial discrimination claim based on a hostile work environment, and that he was treated differently than other Caucasian and Hispanic employees. In a letter to the Equal Employment Opportunity Commission ("EEOC"), Plaintiff states that his charge of discrimination is based on being harassed and intimidated by Supervisor Young for over 300 days.[10] Plaintiff explains that as a result of his mistreatment, he became nervous, developed stomach cramps, headaches, sweats, and exhaustion.

---

[8] Docket No. 54 at 9. Defendant states that when questioned by Plaintiff, Supervisor Young responded "Yes, I'm prejudiced against ignorant people." *Id.* at 4.

[9] Docket No. 48 at 2-3.

[10] *Id.*, Ex. H.

## STANDARD OF REVIEW

Defendant has moved for summary judgment. Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[11] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[12] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[13] "[T]he court must review the record 'taken as a whole.'"[14] All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."[15]

---

[11]Fed. R. Civ. P. 56(c).

[12]*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999);

[13]Fed. R. Civ. P. 56(e)(2).

[14]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[15]*Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir. 1993)); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999).

## DISCUSSION

In the Motion for Summary Judgment Defendant argues (1) Plaintiff cannot establish a *prima facie* case for employment discrimination based on racial harassment, and (2) Plaintiff cannot show disparate treatment or rebut Defendant's legitimate non-discriminatory reason for terminating Plaintiff's employment.[16] With regard to the second issue, Plaintiff concedes he did not raise the issue of his termination from San Antonio Aerospace, L.P., in his EEOC charge of discrimination and is therefore precluded from bringing this claim.[17] Therefore, the discussion below is limited to whether Plaintiff can establish a *prima facie* case of employment discrimination based on a hostile work environment. After reviewing all of the facts in the record, the Court concludes he cannot.

To prove a *prima facie* case of racial harassment alleging hostile work environment, a plaintiff must show (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[18] Plaintiff

---

[16] Docket No. 48 at 1.

[17] To the extent Plaintiff asserts a disparate impact claim that is based on conduct outside of Plaintiff's termination, the Court finds such a claim cannot survive summary judgment because Plaintiff has failed to assert an adverse employment action, and has failed to provide sufficient evidence that others employees, similarly situated to Plaintiff, were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[18] *Celestine v. Petroleos de Venzuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Watts v. Kroger*, 170 F.3d 505, 509 (5th Cir. 1999)).

has established the first element of his *prima facie* case, that he belongs to a protected group. However, the Court finds Plaintiff has failed to establish the remaining four elements and thus, has not met his burden of establishing a *prima facie* case of discrimination.

A hostile work environment claim requires the working environment to be both subjectively and objectively hostile.[19] Whether an environment is hostile depends on the totality of the circumstances.[20] The challenged conduct must create an environment that a reasonable person would find hostile or abusive.[21] The Court finds the conduct complained of by Plaintiff does not rise to the level of race discrimination. While the Court recognizes it must consider the totality of the circumstances, all of the allegations by Plaintiff, even if taken as true, are insufficient to establish a hostile work environment claim.

For a hostile work environment claim to be actionable, the discriminatory conduct must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and result in an abusive workplace environment.[22] In order to amount to a change in the terms, conditions, or privileges of employment, the conduct complained of must be extreme.[23] In determining whether a workplace constitutes a hostile work environment, courts must consider the frequency and severity of the discriminatory conduct; its severity; whether it is physically threatening or

---

[19] *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

[20] *Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996) (citing *Harris*, 510 U.S. at 23 (1993)).

[21] *Id*

[22] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

[23] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

humiliating, or instead, a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.[24]

Plaintiff claims the following conduct by Supervisor Young created a hostile work environment: constantly writing up Plaintiff, denying him breaks at work, telling Plaintiff what to do, falsifying a report, raising his voice, and admitting that he was prejudicial.[25] Even assuming such conduct occurred, it simply does not amount to harassment under an employment discrimination claim. While such acts may have been unwelcome acts, Plaintiff has failed to provide evidence to suggest such actions were racially discriminatory in nature. Regarding Supervisor Young's statement he was prejudiced, even if the Court assumes Plaintiff's version of the facts is true, this was an isolated incident and is insufficient to establish Plaintiff suffered from an abusive work environment.

Furthermore, despite Plaintiff's subjective belief that such conduct was discriminatory, the Court finds it was not severe or pervasive enough to effect a term, condition, or privilege at work. Unless extremely serious, isolated incidents of harassment will not amount to discriminatory changes in the terms and conditions of employment.[26] The Court finds the conduct complained of amounted to isolated incidents and did not rise to the level of severity necessary to establish an employment discrimination claim.[27] The Court further observes that courts in the

---

[24]*Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (citing *Harris*, 510 U.S. at 23).

[25]Docket No. 54 at 7-10.

[26]*Faragher*, 524 U.S. at 788.

[27]*See Faragher*, 524 U.S. at 788 (stating that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment).

Fifth Circuit have granted summary judgment in cases that involve more egregious conduct than in the instant case.[28]

Because Plaintiff has failed to establish he suffered harassment based on race that affected a term, condition, or privilege at work, he cannot establish that Defendant knew or should have known of the alleged discrimination and failed to take prompt remedial action. Furthermore, it appears from the record that Defendant did in fact, take remedial measures after the incident involving Supervisor Young's statement about being prejudicial occurred. Defendant removed Supervisor Young so as to prevent further contact with Plaintiff.

In sum, Plaintiff simply does not point the Court to summary judgment evidence that would permit a reasonable jury to infer that Defendant's conduct was so objectively offensive as to be hostile or abusive. Plaintiff fails to provide evidence sufficient to create a material issue that his workplace was an abusive or hostile working environment. Therefore, the Court is of the opinion Plaintiff's hostile work environment must fail because he is unable to establish a *prima facie* case of employment discrimination alleging hostile environment.

## CONCLUSION

For the foregoing reasons, the Court finds Plaintiff has failed to meet his burden of

---

[28]*See Kebiro v. Walmart*, 193 Fed. Appx. 365 (5th Cir. 2006) (granting summary judgment on a harassment claim where the conduct complained of involved the plaintiff having a difficult time with a workers' compensation claim, having to work as a cashier against his doctor's orders, and being prohibited from taking a half-hour lunch break); *Moore v. UPS*, 150 Fed. Appx. 315 (5th Cir. 2005) (granting summary judgment where the conduct complained of included racial comments and discipline for being tardy or absent); *Wooten v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 2195 (N.D. Tex. January 9, 2007) (conduct complained of included disproportionate treatment at work, failure to discipline other employees for intimidation, racial comments, and failure to protect from physical and verbal attacks).

establishing a *prima facie* case of employment discrimination. Accordingly, Defendant's Motion for Summary Judgment (Docket No. 48) is GRANTED.

It is so ORDERED.

SIGNED this 8th day of February, 2008.

                                                ROYAL FURGESON
                                                UNITED STATES DISTRICT JUDGE